UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| JUDY ROMERO, | § | |
| | § | |
| Plaintiff, | § | Civil Action No. 1:03-CV-01367-MAC |
| | § | |
| vs. | § | |
| | § | |
| WYETH LLC, | § | Honorable Marcia A. Crone |
| | § | |
| Defendant. | § | |

**WYETH'S MOTION TO EXCLUDE THE TESTIMONY OF
MICHAEL T. MALONEY, PH.D. AND BRIEF IN SUPPORT**

Pursuant to Federal Rules of Evidence 402, 403, and 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 593 (1993), Defendant Wyeth LLC f/k/a Wyeth, Inc. and Wyeth Pharmaceuticals, Inc. ("Wyeth") asks the Court to exclude the testimony of Plaintiff's expert witness Michael T. Maloney, Ph.D., and shows as follows:

## TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................1

II.     THE LEGAL STANDARD..................................................................................2

III.    ARGUMENT AND AUTHORITIES..................................................................3

        A.      Dr. Maloney's Testimony Is Irrelevant to Liability for Punitive Damages. ............. 3

        B.      Dr. Maloney's Testimony Relating to the Appropriate Range of Punitive
                Damages Is Advocacy, Not Science. ....................................................................... 4

        C.      Dr. Maloney's "Net Worth" Opinion Would Be Inadmissible Even if Expert
                Testimony Concerning Punitive Damages Were Admissible as a General
                Matter. ...................................................................................................................... 7

                1.      Rule 702............................................................................................................. 7

                2.      Due Process Considerations. ........................................................................... 9

                3.      Rule 403............................................................................................................ 11

        D.      Dr. Maloney's Testimony Relating to Stale Sales Data Will Not Assist the
                Trier of Fact. ........................................................................................................... 12

        E.      Dr. Maloney's "Metrics" Are Not Based on a Reliable Methodology and
                Are Not Consistent with the Requirements of the Federal Constitution................. 13

        F.      A Prima Facie Evidentiary Showing Is Necessary. ................................................. 16

IV.     CONCLUSION....................................................................................................17

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Ace v. Aetna Life Insurance Co.*,
    40 F. Supp. 2d 1125 (D. Alaska 1999) ............................................................................11

*Anderson v. Boeing Co.*,
    No. 02-CV-196-CVE-FHM, 2005 U.S. Dist. LEXIS 6105
    (N.D. Okla. Aug. 2, 2005) ................................................................................................7

*BMW of N. America v. Gore*,
    517 U.S. 559 (1996).........................................................................................10, 11, 15, 16

*Bolt v. Merrimack Pharmaceuticals, Inc.*,
    503 F.3d 913 (9th Cir. 2007) ............................................................................................8

*Broaddus v. U.S. Army Corps of Eng'rs*,
    380 F.3d 162 (4th Cir. 2004) ............................................................................................8

*Brown v. Parker-Hannifin Corp.*,
    919 F.2d 308 (5th Cir. 1990) ..........................................................................................14

*Burton v. Wyeth-Ayerst Laboratories*,
    513 F. Supp. 2d 708 (N.D. Tex. 2007) ......................................................................7, 17

*Continental Web Press, Inc. v. NLRB*,
    767 F.2d 321 (7th Cir. 1985), *disapproved of on other grounds by*, *Commissioner,*
    *INS v. Jean*, 496 U.S. 154 (1990) ....................................................................................8

*Cooper Industrial, Inc. v. Leatherman Tool Group, Inc.*,
    532 U.S. 424 (2001)........................................................................................................10

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
    509 U.S. 579 (1993).............................................................................................1, 3, 13

*Dering v. Serv. Experts Alliance LLC*,
    2007 U.S. Dist. LEXIS 89972, 69 Fed. R. Serv. 3d (Callaghan)
    935 (N.D. Ga. Dec. 6, 2007) ............................................................................................7

*In re Exxon Valdez*,
    296 F. Supp. 2d 1071 (D. Alaska 2004) .........................................................................15

*Flores v. Johnson*,
    210 F.3d 456 (5th Cir. 2000) ............................................................................................4

*Georgia Kaolin International v. M/V Grand Justice*,
      644 F.2d 412 (5th Cir. 1981) .......................................................................9

*Gray v. Hoffman-La Roche, Inc.*,
      82 F. App'x 639 (10th Cir. 2003) ...............................................................10

*Hayes v. Wal-Mart Stores, Inc.*,
      294 F. Supp. 2d 1249 (E.D. Okla. 2003) ......................................................7

*Honda Motor Co. v. Oberg*,
      512 U.S. 415 (1994)....................................................................................11

*Kuhns v. Board of Governors of Federal  Reserve System*,
      930 F.2d 39 (D.C. Cir. 1991) .......................................................................8

*Michaels v. Avitech, Inc.*,
      202 F.3d 746 (5th Cir. 2000) .....................................................................14

*Parkins v. Brown*,
      241 F.2d 367 (5th Cir. 1957) .....................................................................16

*Paz v. Brush Engineered Materials, Inc.*,
      555 F.3d 383 (5th Cir. 2009) .......................................................................3

*Philip Morris v. Williams*,
      549 U.S. 346 (2007)..............................................................................10, 16

*Pipitone v. Biomatrix, Inc.*,
      288 F.3d 239 (5th Cir. 2002) .....................................................................14

*Sanders v. Jackson*,
      209 F.3d 998 (7th Cir. 2000) .......................................................................8

*State Farm Mutual Insurance Co. v. Campbell*,
      538 U.S. 408 (2003)..................................................................10, 11, 15, 16

*TXO Prod. Corp. v. Alliance Resource Corp.*,
      509 U.S. 443 (1993)....................................................................................11

*Trans World Airlines, Inc. v. Hughes*,
      314 F. Supp. 94 (S.D.N.Y. 1970)..................................................................8

*Voilas v. General Motors Corp.*,
      73 F. Supp. 2d 452 (D.N.J. 1999) ...........................................................5, 6, 7

## STATE CASES

*Castelli v. Tolibia*,
    83 N.Y.S.2d 554 (Sup. Ct. 1948)......................................................................8

*EnviroPower L.L.C. v. Bear Stearns & Co.*,
    265 S.W.3d 1 (Tex. App.—Houston [1st Dist.] 2007, pet. denied)....................8

*G.M. Houser, Inc. v. Rodgers*,
    204 S.W.3d 836 (Tex. App.—Dallas 2006, no pet.)..........................................8

*GTE Southwest, Inc. v. Bruce*,
    998 S.W.2d 605 (Tex. 1999)........................................................................6, 7

*In re Jacobs*,
    300 S.W.3d 35 (Tex. App.—Houston [14th Dist.] 2009, orig. proceeding)......................8

*LMC Complete Automotive, Inc. v. Burke*,
    229 S.W.3d 469 (Tex. App.—Houston [1st Dist.] 2007, pet.  denied)...........7, 8

*Ramco Oil & Gas, Ltd. v. Anglo Dutch (Tenge) L.L.C.*,
    171 S.W.3d 905 (Tex. App.—Houston [14th Dist.] 2005, published order).................8, 9

*Tex. Custom Pools, Inc. v. Clayton*,
    293 S.W.3d 299 (Tex. App.—El Paso 2009, order) ...........................................8

*Transport Insurance Co. v. Moriel*,
    879 S.W.2d 10 (Tex. 1994)......................................................................10, 11

## FEDERAL STATUTES

Fed. R. Evid. 402, 403 .............................................................1, 2, 11, 16

Fed. R. Evid. 702 .........................................................................1, 3, 6, 7, 9, 13

Fed. R. Evid. 703 .................................................................................8

## STATE STATUTES

Tex. Civ. Prac. & Rem. Code § 41.011(a)(6) .........................................9, 10

Tex. Civ. Prac. & Rem. Code § 52.006(b)................................................8

**OTHER**

Stephen M. Horner,
   *Assessing Economic Damages in Personal Injury and Wrongful Death Litigation:*
   *The State of Texas*, 20 J. of Forensic Econ. 49, 69 (2007)....................................................3

## I.     INTRODUCTION

Wyeth asks the Court to bar the testimony of Plaintiff's economist expert, Michael Maloney, Ph.D.  The purpose of Dr. Maloney's testimony is to convince the jury that it should award punitive damages and to suggest an amount.[1]  First, this testimony usurps the role of the jury, and Dr. Maloney fails to provide anything other than argument and non-specialized knowledge.  Second, the amount of Wyeth's net worth is a fact and not a proper subject for expert opinion testimony.  Third, Dr. Maloney provides inadmissible figures for Wyeth's net worth based on unreliable facts and methodology, and he proposes to read sales data to the jury with no expert analysis.  Fourth, Dr. Maloney provides a number of "metrics" that are not based on a reliable methodology.  Fifth, his methodology is inconsistent with the Supreme Court's requirements for punitive damages.  Finally, his testimony about Wyeth's net worth is irrelevant, because Wyeth will stipulate to its net worth if the Court overrules Wyeth's constitutional and other objections to the admission of evidence of its net worth.  For these reasons, Dr. Maloney's testimony is inadmissible under Rules 402, 403, and 702 and under *Daubert*, 509 U.S. 579.

Dr. Maloney has never testified in federal court in the HT litigation.  The federal MDL court has barred Dr. Maloney from testifying about whether punitive damages are required, his methods for calculating punitive damages, and the amount of punitive damages the jury should award.[2]  Likewise, the Pennsylvania court overseeing approximately one thousand hormone

---

[1]  *See* **Exhibit 1 –** Rep. of Michael T. Maloney, Ph.D. ("Maloney Rep.") (Feb. 13, 2006) at 7-8.

[2]  *See* **Exhibit 2 –** 7/13/06 AM Hearing Tr. at 6:1-20, *Reeves v. Wyeth Inc.*, No. 4:05CV00163 (E.D. Ark.); **Exhibit 3 –** *Id.*, 9/12/06 AM Trial Tr. at 3757:11-3758:1.  Wyeth stipulated to its net worth, and therefore the court did not rule on Wyeth's challenge to Dr. Maloney's methodology in calculating its net worth.  *See* **Exhibit 4 –** Order, *Reeves v. Wyeth Inc.* (July 18, 2006).

therapy cases has twice excluded his testimony.[3]  Additionally, U.S. Magistrate Judge Zack

Hawthorn excluded Dr. Maloney's opinions on methods of measuring punitive damages,

concluding his testimony was "wholly prejudicial" and his methodology was "arbitrary."[4]

Although Magistrate Judge Hawthorn would have permitted Dr. Maloney to testify regarding

Wyeth's net worth, Wyeth respectfully disagrees with that conclusion.[5]  As discussed in Section

III.C.1 below, Dr. Maloney's net worth testimony uses an incorrect definition of net worth, is not

based on reliable principles and methods, and is not a proper subject for expert testimony

because a company's net worth is an indisputable fact not subject to opinion testimony.

Therefore, Dr. Maloney's net worth testimony should be excluded along with his testimony

regarding Wyeth's liability for punitive damages, his suggested range of punitive damages,

methods for measuring punitive damages, and stale sales data.

## II.      THE LEGAL STANDARD

Federal Rule of Evidence 402 bars the admission of "evidence which is not relevant,"

while Rule 403 excludes relevant evidence "if its probative value is substantially outweighed by

the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by

considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

FED. R. EVID. 402, 403.

---

[3]     In both cases, the court granted the motion to exclude testimony of the appropriate amount of punitive damages and profit margin, but did not rule on Wyeth's challenge to Dr. Maloney's net worth and sales data testimony; instead, the court "deferred to the trial judge to decide if he allows punitive damages to go to the jury." **Exhibit 5 –** Order, *Kendall v. Wyeth* (Oct. 15, 2009); **Exhibit 6 –** Order, *Barton v. Wyeth* (Sept. 8, 2009).

[4]     **Exhibit 7 –** Order Granting in Part and Denying in Part Defs.' Mot. to Exclude the Test. of Dr. Maloney, *Lea v. Wyeth LLC, et al.*, No. 1:03-CV-001339 (E.D. Tex. Sep. 16, 2011) ("Lea Order").

[5]     *See id.* at 6-7, 9-10.  *Lea* settled prior to trial, so Dr. Maloney did not testify in that case.

Federal Rule of Evidence 702 and *Daubert* limit expert testimony to experts who are "qualified . . . by knowledge, skill, experience, training, or education" and whose specialized knowledge will "assist the trier of fact" in understanding evidence or determining a fact in issue. *Daubert*, 509 U.S. at 588 (quotations omitted).  Expert testimony also must be "based upon sufficient facts or data," and upon "reliable principles and methods," and the expert's methods must reliably "fit" the facts and circumstances of the case.  FED. R. EVID. 702; *see also Daubert*, 509 U.S. at 589-95.  All expert evidence must be both relevant and reliable.  *E.g.*, *Daubert*, 509 U.S. at 589; *Paz v. Brush Engineered Materials, Inc.*, 555 F.3d 383, 388 (5th Cir. 2009) ("[A]ny step that renders the analysis unreliable . . . renders the expert's testimony inadmissible.") (internal quotation marks omitted) (ellipsis in original).

## III.   ARGUMENT AND AUTHORITIES

### A.   Dr. Maloney's Testimony Is Irrelevant to Liability for Punitive Damages.

Dr. Maloney has never testified in federal court in this litigation.  The reason is plain: an expert may not testify as to the appropriate amount of punitive damages.[6]  Dr. Maloney, however, seeks to tell the jury both that it should award punitive damages and then what amount it should award.  Such testimony is inadmissible, as Judge Wilson determined in the very first MDL bellwether trial:

> MR. HEARD:  He says in his report that my opinion is that punitive damages are required.  Well, that's not for Dr. Maloney to tell the jury. That's for the jury to determine on its own.
>
> THE COURT:  I agree.  You've won.
>
> MR. HEARD:  He says he wants to tell the jury how large the punitive damages should be.

---

[6]   *See* **Exhibit 8 –** Stephen M. Horner, *Assessing Economic Damages in Personal Injury and Wrongful Death Litigation: The State of Texas*, 20 J. of Forensic Econ. 49, 69 (2007) ("[E]xperts do not give opinions regarding the appropriate level of punitive damages.").

THE COURT:  You've won.[7]

Likewise, Judge Wilson ruled that Dr. Maloney could not tell the jury how it should calculate a punitive damages award.[8]

Dr. Maloney seeks to offer opinions about Wyeth's profitability, about the amount of punitive damages that should be imposed on Wyeth, and about the factors the jury should consider in determining the size of any punitive award.  This testimony is neither relevant nor admissible.

**B.      Dr. Maloney's Testimony Relating to the Appropriate Range of Punitive Damages Is Advocacy, Not Science.**

Dr. Maloney's proposed punitive damages testimony is meant to persuade jurors to apply pseudo-scientific formulas that automatically generate the "appropriate" amount of punitive damages – calculated to be between $168 million and $21.3 billion.  The problem in allowing Dr. Maloney to make this argument, of course, is that it subverts the fundamental distinction between what is presented to the jury from counsel table – as to which jurors are naturally and properly skeptical – and what is presented from the witness stand, especially by one who wears the Court-conferred distinction of "expert."  The limitations on the use of expert testimony exist in part to safeguard against this very danger.  As the Fifth Circuit stated, "the problem . . . is not the introduction of one man's opinion . . . but the fact that the opinion is introduced by one whose title and education (not to mention designation as an 'expert') gives him significant credibility in the eyes of the jury as one whose opinion comes with the imprimatur of scientific fact."  *Flores v. Johnson*, 210 F.3d 456, 465-66 (5th Cir. 2000).  This Court should not allow

---

[7]    **Exhibit 2 –** 7/13/06 AM Hearing Tr. at 6:9-15, *Reeves v. Wyeth Inc.*, No. 4:05CV00163 (E.D. Ark.).

[8]    *Id.* at 6:16-20.  Because Wyeth stipulated to its net worth during the hearing, the court did not rule on Wyeth's challenge to Dr. Maloney's methodology in calculating its net worth.  *See* **Exhibit 4 –** Order, *Reeves v. Wyeth Inc.* (July 18, 2006).

Dr. Maloney to exploit that aura of authority to bolster the impact of what are essentially his personal moral judgments (or the targets Plaintiff's counsel has in mind) regarding what dollar figures represent "appropriate" punitive damage awards.  As Magistrate Judge Hawthorn recognized in excluding Dr. Maloney's testimony, "the amounts proffered are wholly prejudicial to the extent that they are listed as part of a potential range of punitive damages."[9]

*Voilas v. General Motors Corp.*, 73 F. Supp. 2d 452 (D.N.J. 1999), addresses the problems inherent in expert testimony about punitive damages.  The *Voilas* plaintiffs were employees of General Motors who claimed GM tricked them into giving up benefits under collective bargaining agreements.  The court refused to allow the plaintiffs' expert, Dr. Frank Tinari, to testify on "the range of reasonable value of punitive damages."  *Id.* at 463.  Dr. Tinari was a Ph.D. economist, as is Dr. Maloney.  *Id.* at 457.  Yet while the court found Dr. Tinari qualified to testify about the plaintiffs' alleged economic damages, it opined that "there is no indication that he is similarly qualified to testify as to three approaches to ascertaining punitive damages or as to the range of reasonable value of punitive damages."  *Id.* at 463.  "Having read a number of articles on the goals and theories of punitive damages," the court observed, "does not an expert make, nor does having an extensive economics background."  *Id.* at 463-64.  The *Voilas* court's decision is well-reasoned and persuasive, and provides a framework for analyzing the admissibility of expert testimony concerning punitive damages.  Like Dr. Tinari, Dr. Maloney admits that his "suggestions" for calculating punitive damages were not derived from any expertise he possesses; they are merely "observations on how society has chosen to

---

[9]  **Exhibit 7 –** *Lea* Order at 7.

handle this situation in other venues."[10]  This sort of testimony does not reflect economic expertise so much as it mouths the arguments of counsel.[11]

The fundamental problem with "expert" punitive damages testimony is that "there are no credentials that could qualify an individual as a punitive damages expert," because assessing punitive damages implicates public policies (principally retribution and deterrence) that are not strictly, or even primarily, economic and that rest "within the province of the jury and, thus, do[] not necessitate the aid of expert testimony." *Voilas*, 73 F. Supp. 2d at 464.  Dr. Maloney admits that determining an appropriate punitive damages award, like determining appropriate fines and penalties in other contexts, is a matter of "social policy."[12]  The jury does not need his personal opinions about "social policy" to determine what award, if any, is appropriate.  As in *Voilas*, there is no reason to believe that Dr. Maloney, "or any other expert for that matter, is more qualified than the average juror to make a straightforward determination whether to punish [the defendant] and if so, to what extent." *Voilas*, 73 F. Supp. 2d at 464.

Texas law is in accord with *Voilas*.  In *GTE Southwest, Inc. v. Bruce*, 998 S.W.2d 605 (Tex. 1999), the court held that it was error to admit expert testimony that conduct was "extreme and outrageous" in support of the plaintiffs' claims of intentional infliction of emotional distress. *Id.* at 619-20.  As the court observed, "to be admissible, expert testimony must generally involve 'scientific, technical, or other specialized knowledge' as to which a witness could be qualified as an expert by 'knowledge, skill, experience, training, or education,' and it must assist the trier of fact." *Id.* at 620 (quoting TEX. R. EVID. 702); *see also* FED. R. EVID. 702.  As with

---

[10]   **Exhibit 9 –** Dep. of Michael Maloney, Ph.D. in *Banks v. Wyeth* (Mar. 30, 2006) ("Maloney Dep.") at 337:3-6; 338:2-9.  Dr. Maloney has not been deposed in this case.

[11]   *See id.* at 370:15 – 371:3, 376:5-20.

[12]   **Exhibit 1 –** Maloney Rep. at 8.

determinations regarding whether conduct is extreme or outrageous, Dr. Maloney's subjective assessments of whether and to what extent conduct warrants punitive damages is not a subject that requires expert opinion.  "Where, as here, the issue involves only general knowledge and experience rather than expertise, it is within the province of the jury to decide, and admission of expert testimony on the issue is error."  *GTE Southwest*, 998 S.W.2d at 620.[13]

> **C.    Dr. Maloney's "Net Worth" Opinion Would Be Inadmissible Even if Expert Testimony Concerning Punitive Damages Were Admissible as a General Matter.**
>
> **1.   Rule 702.**

Dr. Maloney's net worth testimony uses an incorrect definition of net worth, is not based on reliable principles and methods, and is not a proper subject for expert testimony because a company's net worth is an indisputable fact not subject to opinion testimony.  *See* FED. R. EVID. 702.  "Net worth is calculated as the difference between total assets and total liabilities as determined by generally accepted accounting principles ["GAAP"]."  *LMC Complete Automotive, Inc. v. Burke*, 229 S.W.3d 469, 482 (Tex. App.—Houston [1st Dist.] 2007, pet.

---

[13]   *See also* **Exhibit 7 –** *Lea* Order at 7 (finding Dr. Maloney's suggested punitive damages amounts prejudicial and his methodology arbitrary); *Burton v. Wyeth-Ayerst Labs.*, 513 F. Supp. 2d 708, 716-17 (N.D. Tex. 2007) (finding expert's suggested punitive damages amounts prejudicial and unsupported); *Dering v. Serv. Experts Alliance LLC*, 2007 U.S. Dist. LEXIS 89972, 69 Fed. R. Serv. 3d (Callaghan) 935 (N.D. Ga. Dec. 6, 2007) (excluding expert's testimony regarding punitive damages because "[t]he amount of punitive damages is to be determined by the enlightened conscience of an impartial jury"); *Anderson v. Boeing Co.*, No. 02-CV-196-CVE-FHM, 2005 U.S. Dist. LEXIS 6105, at *6 (N.D. Okla. Aug. 2, 2005) ("Plaintiffs have not demonstrated that Mr. Partin, or any other expert, is more qualified than the average juror to make a determination whether the proof merits punitive damages, and if so, to what extent.  In this regard, the Court notes the absence of citation to any cases where any such testimony has been received on the issue of punitive damages."); *Hayes v. Wal-Mart Stores, Inc.*, 294 F. Supp. 2d 1249, 1250-51 (E.D. Okla. 2003) (finding that plaintiff's punitive damages expert's "proposed testimony would invade the province of the jury and would not be helpful to that body," and agreeing with *Voilas* that "the assessment of possible ranges of punitive damages is not a proper subject for an expert's report or testimony").

denied); *G.M. Houser, Inc. v. Rodgers*, 204 S.W.3d 836, 840 (Tex. App.—Dallas 2006, no pet.);

*see also* Black's Law Dictionary 1041 (6th ed. 1990) (defining net worth as "the amount by

which assets exceed liabilities").[14]  Texas courts have consistently applied this method of

measuring net worth,[15] as have courts across the country.[16]  Dr. Maloney failed to apply this

methodology in calculating Wyeth's net worth, however, rendering his testimony unreliable.

In his report, Dr. Maloney states that "Yahoo Financial reports Wyeth's net worth as of

February 12, 2006, to be $61.97 billion."[17]  Putting aside his reliance on Yahoo,[18] the reported

---

[14]  *See also* **Exhibit 10** – Rep. of Patrick A. Gaughan, Ph.D. (May 5, 2006) at ¶ 21 ("Gaughan Rep.") (explaining that in corporate finance, there is one definition of net worth: it is "the difference between total assets and total liabilities").

[15]  *See In re Jacobs*, 300 S.W.3d 35, 46 (Tex. App.—Houston [14th Dist.] 2009, orig. proceeding) (limiting the scope of deposition testimony related to a punitive damages claim to the defendants' "current net worth, i.e., the amount of current total assets less current total liabilities determined in accordance with generally accepted accounting principles ('GAAP')"); *see also Tex. Custom Pools, Inc. v. Clayton*, 293 S.W.3d 299, 305 (Tex. App.—El Paso 2009, order); *EnviroPower L.L.C. v. Bear Stearns & Co.*, 265 S.W.3d 1, 5 (Tex. App.—Houston [1st Dist.] 2007, pet. denied) (en banc); *LMC Complete Automotive, Inc. v. Burke*, 229 S.W.3d 469, 482 (Tex. App.—Houston [1st Dist.] 2007, pet. denied); *G.M. Houser, Inc. v. Rodgers*, 204 S.W.3d 836, 840 (Tex. App.—Dallas 2006, no pet.); *Ramco Oil & Gas, Ltd. v. Anglo Dutch (Tenge) L.L.C.*, 171 S.W.3d 905, 914 (Tex. App.—Houston [14th Dist.] 2005, published order) (all determining net worth according to GAAP in the context of calculating the proper amount of a supersedeas bond under TEX. CIV. PRAC. & REM. CODE § 52.006(b)).

[16]  *See Bolt v. Merrimack Pharms., Inc.*, 503 F.3d 913, 917 (9th Cir. 2007) (rejecting a contrary definition of net worth, "[g]iven the common and well-established meaning of the term 'net worth' as the difference between total assets and total liabilities"); *see also Continental Web Press, Inc. v. NLRB*, 767 F.2d 321, 323 (7th Cir. 1985), *disapproved of on other grounds by*, *Comm'r, INS v. Jean*, 496 U.S. 154, 160-66 (1990); *Broaddus v. U.S. Army Corps of Eng'rs*, 380 F.3d 162, 166-67 (4th Cir. 2004); *Sanders v. Jackson*, 209 F.3d 998, 999-1002 (7th Cir. 2000); *Kuhns v. Bd. of Governors of Fed. Reserve Sys.*, 930 F.2d 39, 41-42 (D.C. Cir. 1991); *Castelli v. Tolibia*, 83 N.Y.S.2d 554, 564 (Sup. Ct. 1948); *Trans World Airlines, Inc. v. Hughes*, 314 F. Supp. 94, 97 (S.D.N.Y. 1970).

[17]  **Exhibit 1** – Maloney Rep. at 7.

[18]  Rule 703 permits an expert to rely on hearsay material only if it is "of a type reasonably relied upon by experts in the particular field."  FED. R. EVID. 703.

figure clearly refers to "market capitalization," not net worth, which is separately listed.[19]

"Market capitalization and net worth are not the same thing." *Ramco Oil & Gas, Ltd. v. Anglo Dutch (Tenge) L.L.C.*, 171 S.W.3d 905, 914 (Tex. App.—Houston [14th Dist.] 2005, published order). Market capitalization "reflects the overall value of a company's stock and may be higher or lower than the company's net worth."[20]  *Id.*  In *Ramco*, the court recognized that the correct measure of net worth is "the difference between total assets and total liabilities determined in accordance with GAAP," and held that "[b]y using market capitalization as the standard for determining Ramco Energy's net worth, the trial court applied an incorrect legal standard and erred as a matter of law."  *Id.*

Because Dr. Maloney failed to use the correct method of calculating net worth, he miscalculated Wyeth's net worth by almost $50 billion: Wyeth's net worth as of December 31, 2005, was approximately $12 billion, not $61.97 billion.[21]  This critical error renders Dr. Maloney's "net worth" opinion unreliable and inadmissible.  *See* Fed. R. Evid. 702 (requiring that expert testimony be "based upon sufficient facts or data" and be "the product of reliable principles and methods"); *see also Georgia Kaolin Int'l v. M/V Grand Justice*, 644 F.2d 412, 417 (5th Cir. 1981) (reversing judgment when based upon expert testimony that was "contrary to the proven facts").

### 2.  Due Process Considerations.

Even assuming that Dr. Maloney were to apply the proper definition of "net worth," Supreme Court authority demonstrates that the admission of evidence regarding Wyeth's net worth is improper for numerous reasons.  For these reasons, § 41.011(a)(6) of the Texas Civil

---

[19]  **Exhibit 10 –** Rep. of Patrick A. Gaughan, Ph.D. (May 5, 2006) at ¶ 20 ("Gaughan Rep.").

[20]  *See also id.* ("Market capitalization is the market value of a company's outstanding shares.").

[21]  **Exhibit 11 –** Wyeth 2005 Financial Report at 4.

Practice and Remedies Code, which instructs the fact-finder to consider net worth in assessing punitive damages, is unconstitutional, as discussed below.[22]

Net worth has no bearing on any of the factors identified by the Supreme Court as relevant to a punitive damages determination: (1) the reprehensibility of defendant's conduct; (2) the relationship between the penalty and the harm to the victim caused by the defendant's actions; and (3) the sanctions imposed in other cases for comparable misconduct.[23] *Philip Morris v. Williams*, 549 U.S. 346, 351 (2007); *State Farm Mut. Ins. Co. v. Campbell*, 538 U.S. 408, 418 (2003); *Cooper Indus., Inc. v. Leatherman Tool Group, Inc.*, 532 U.S. 424, 435 (2001); *BMW of N. Am. v. Gore*, 517 U.S. 559, 575-85 (1996). Furthermore, Wyeth's net worth is overwhelmingly derived from lawful conduct that is not challenged as wrongful, conduct that is unrelated to Plaintiff, and business outside of Texas, none of which may be the basis for an award of punitive damages. *See Philip Morris*, 549 U.S. at 353 ("[T]he Constitution's Due Process Clause forbids a State to use a punitive damages award to punish a defendant for injury that it inflicts upon nonparties . . . ."); *State Farm*, 538 U.S. at 420 (holding that punitive damages may not be "used as a platform to expose, and punish, the perceived deficiencies of [defendant's] operations throughout the country"); *Cooper*, 532 U.S. at 441 (punitive damages

---

[22]   While § 41.011(a)(6) does allow the jury to consider evidence of net worth, the Texas Supreme Court recognized that "evidence of a defendant's net worth, which is generally relevant only to the amount of punitive damages, by highlighting the relative wealth of a defendant, has a very real potential for prejudicing the jury's determination of other disputed issues in a tort case." *Transp. Ins. Co. v. Moriel*, 879 S.W.2d 10, 29-30 (Tex. 1994). Because evidence of net worth is so prejudicial, the court held that "a trial court, if presented with a timely motion, should bifurcate the determination of the amount of punitive damages from the remaining issues." *Id.*

[23]   Nor did the Supreme Court in *Phillip Morris*, *State Farm*, *Cooper*, or *BMW* identify the defendant's net worth as a permissible factor to consider in an award of punitive damages. Moreover, the amount of a company's net worth does not make it more or less likely that the company engaged in culpable conduct. *See Gray v. Hoffman-La Roche, Inc.*, 82 F. App'x 639, 650-51 (10th Cir. 2003) (evidence of financial motive of pharmaceutical company for failing to issue stronger warning is immaterial).

determination could not be sustained if it was based in part on the defendants' lawful copying of an unpatented product); *BMW*, 517 U.S. at 573 (Alabama could not "punish BMW for conduct that was lawful where it occurred").[24]  A procedure that allows juries to increase punishments based on corporate wealth violates due process not only because it deprives defendants of reasonable constraints and adequate notice, *State Farm*, 538 U.S. at 417; *BMW*, 517 U.S. at 574, but also because it is arbitrary, permits prejudice against large (and, as here, out-of-state) corporations, and discriminates based on financial status.  *See, e.g., Honda Motor Co. v. Oberg*, 512 U.S. 415, 432 (1994); *TXO Prod. Corp. v. Alliance Res. Corp.*, 509 U.S. 443, 464 (1993) (plurality opinion).

Because Wyeth will not make a jury argument that it is unable to pay a reasonable punitive damages award supported by the evidence, there is no permissible purpose for introducing net worth evidence.  Accordingly, such evidence should be excluded.

### 3.  Rule 403.

Evidence of Wyeth's net worth evidence is also inadmissible under Rule 403 because any asserted probative value of such evidence is far outweighed by the danger of unfair prejudice. The injection of a multi-billion-dollar figure into the trial could well lead to a verdict tainted by "bias against big business, particularly those without strong local presences."  *Honda Motor Co.*, 512 U.S. at 432; *see also Transp. Ins. Co. v. Moriel*, 879 S.W.2d 10, 29-30 (Tex. 1994) (observing that evidence of net worth, "by highlighting the relative wealth of a defendant, has a very real potential for prejudicing the jury's determination of other disputed issues in a tort

---

[24]  *See also Ace v. Aetna Life Ins. Co.*, 40 F. Supp. 2d 1125, 1135 (D. Alaska 1999) ("[D]ue process and comity concerns counsel restraint where a proposed award of punitive damages is based to a significant degree on an accumulation of wealth generated outside the jurisdiction where the wrong was suffered.").

case"). Moreover, the jury will be well aware from other evidence that Wyeth is a very large company.

Finally, without waiver of or prejudice to its prior positions as to the inadmissibility of net worth evidence, in the event the Court concludes that net worth evidence is admissible, Wyeth will offer to stipulate to its net worth, thereby obviating any need for expert testimony.

**D.** **Dr. Maloney's Testimony Relating to Stale Sales Data Will Not Assist the Trier of Fact.**

Dr. Maloney proposes to assume the role of an impartial expert rendering "economic" opinions about the sales history of "Premarin and the Premarin family of products" and "the importance of the drugs' sales to the company."[25] But in reality, Dr. Maloney will seek to persuade the jury that Wyeth deserves punishment to the tune of millions (or billions) of dollars, based not on any economic expertise but on – admittedly – reading documents that anyone can read and speculating about the reasons why sales for hormone therapy went up. In fact, Dr. Maloney has conceded as much at his deposition:

> Q.     What is the basis for your opinion? It's really just your taking separate events, they all occurred near in time, and then you're making—it appears that you're making, and perhaps I misunderstood, but it appears that you're making a statement that there is a cause/effect relationship?
>
> A.     That's exactly what I'm doing.
>
> Q.     Well, what is the basis for your, what you said is a scientific opinion or economic opinion that there's a cause/effect relationship? Did you undertake any analysis to quantify what was the result of the publication of the book Feminine Forever in relationship to the sales activity by Wyeth?
>
> A.     No.[26]

---

[25]  **Exhibit 1 –** Maloney Rep. at 2.

[26]  **Exhibit 9 –** Maloney Dep. at 214:3-21 (emphasis added).

Dr. Maloney admitted that anyone can do what he has done.[27]  This testimony is not helpful to jurors who are capable of reading the documents, and drawing inferences, for themselves.  Accordingly, it is not proper expert testimony.  *See* FED. R. EVID. 702 (expert testimony must "assist the trier of fact").

> **E.     Dr. Maloney's "Metrics" Are Not Based on a Reliable Methodology and Are Not Consistent with the Requirements of the Federal Constitution.**

Rule 702 and *Daubert* require that both the methodology used and the manner in which an expert applies the methodology be reliable for expert testimony to be admissible.  *Daubert*, 509 U.S. at 592-93 (holding that the Court "must determine 'whether' the reasoning or methodology underlying the [expert] testimony is scientifically valid and [] whether that reasoning and methodology properly can be applied to the facts in issue").  Dr. Maloney's "metrics" fail that test, as he misapplies basic principles of economics to create an inflated starting figure for his punitive damages opinion.  That starting figure supposedly represents Wyeth's economic gain from its alleged misconduct.  But while Dr. Maloney offers various ways to calculate "gain on misconduct," he cannot identify what this supposed misconduct was, how severe it was, or when it occurred.[28]  Dr. Maloney admits that he lacks sufficient "specific information" to make his estimates:

> It's not exactly correct to say I haven't assumed periods [of time in which the misconduct supposedly occurred].  But the calculations are fairly general in that sense.  If I were to do it with more care—not more care.  If I were to do it with more specific information, I would suggest that the right way to think about this is in terms of the severity of the misconduct, when the misconduct occurred, and the time period over which the misconduct generated gains would be—that would increase the—that specificity, I think, would increase the importance of the estimates.[29]

---

[27]   *Id.* at 192:7-11.

[28]   **Exhibit 1 –** Maloney Rep. at 7; **Exhibit 9 –** Maloney Dep. at 341:22-343:17.

[29]   **Exhibit 9 –** Maloney Dep. at 343:4-17.

It thus appears that Dr. Maloney assumes that Wyeth withheld information that became public only when WHI published its report in July 2002, and that any decrease in "[t]he discounted value of the post-tax profit attributable to Premarin" after that event reflects Wyeth's "gain" from supposedly withholding that information.[30]  But Dr. Maloney offers no analytical basis for his assumption.  He fails to address what method, if any, he applied to separate the supposed decrease in profit attributable to misconduct from (1) the decrease in profit attributable solely to newly available information through no fault of Wyeth; or (2) the decrease attributable solely to increased publicity regarding information that was already in Wyeth's labeling (*e.g.*, breast cancer); or (3) the decrease attributable to journalistic exaggeration of the WHI reports; or (4) the decrease attributable to adverse publicity about the pharmaceutical industry generally; or (5) the decrease attributable to competition from other drugs.  Assuming that a reliable method for calculating "gain from misconduct" even exists in the field of economics – an unproven assumption on which Plaintiff bears the burden of proof – Dr. Maloney's failure to consider these and other factors that may have influenced the profitability of hormone therapy betrays a total absence of reliable economic methodology.  *Compare Michaels v. Avitech, Inc.*, 202 F.3d 746, 753-55 (5th Cir. 2000) (discussing how the failure to exclude alternative causes renders an expert's opinion insufficient), *and Brown v. Parker-Hannifin Corp.*, 919 F.2d 308, 311-12 (5th Cir. 1990) (affirming directed verdict and exclusion of testimony of expert willing to speculate about two possible causes of mechanical failure without any basis for ruling out equally plausible alternative causes), *with Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 248-49 (5th Cir. 2002) (denying motion to exclude after finding expert "methodically eliminated" alternative causes).

---

[30]  **Exhibit 1 –** Maloney Rep. at 7.

Furthermore, Dr. Maloney's "metrics" – which involve applying one of three multipliers to Wyeth's supposed nationwide "gain from misconduct" – have little, if anything at all, to do with the standards enunciated by the Supreme Court.[31]  The Supreme Court has explained in a series of decisions what factors are relevant to whether a punitive damages award is constitutionally excessive.  *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408 (2003); *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559 (1996).[32]  These are "(1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases."  *State Farm*, 538 U.S. at 418 (citing *BMW*, 517 U.S. at 575).  The most important criterion is the degree of reprehensibility of the defendant's conduct, which turns on "whether: the harm caused was physical as opposed to economic; the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; the target of the conduct had financial vulnerability; the conduct involved repeated actions or was an isolated incident; and the harm was the result of intentional malice, trickery, or deceit, or mere accident."  *Id*. at 419 (citing *BMW*, 517 U.S. at 576-77).  The Supreme Court also has clarified that "the scope of the interest in punishment and deterrence" of a state is "properly limited" to the interests of the

---

[31]   *See* **Exhibit 9 –** Maloney Dep. at 344:17-23.  As Magistrate Judge Hawthorne found, "Dr. Maloney's speeding-ticket metric is entirely arbitrary because he provides no reason for making $100 the amount of the hypothetical speeding ticket rather than another amount." **Exhibit 7 –** *Lea* Order at 7.

[32]   Courts have noted that these factors identified by the Supreme Court should also guide a jury's decision in awarding punitive damages, so as to avoid "a situation where the jury awarded . . . punitive damages based upon one script, with this court second guessing the jury's work using a different script." *In re Exxon Valdez*, 296 F. Supp. 2d 1071, 1091 (D. Alaska 2004).

state's citizens, "rather than those of the entire Nation." *BMW*, 517 U.S. at 574; *see also Philip Morris*, 549 US. at 353-57.

Nothing in its decisions suggest that the Supreme Court thinks juries require the assistance of an expert.  But even if juries did need such assistance, Dr. Maloney's "metrics" would not assist a jury to assess Wyeth's conduct nor to avoid a disparity between the harm suffered by Plaintiff and the punitive damages award.  Nor would the "metrics" guide the jury in distinguishing between physical and economic injury, assessing whether the Plaintiff was financially vulnerable, or judging whether the conduct involved repeated actions and was the result of intentional malice or trickery rather than accident.  Moreover, Dr. Maloney's metrics impermissibly involve data encompassing all of Wyeth's operations nationwide, and are not limited to Texas.[33]  Accordingly, for these additional reasons, Dr. Maloney's proposed testimony should be excluded as irrelevant under Rule 402 and as confusing, misleading, and unfairly prejudicial under Rule 403.

### F.     A Prima Facie Evidentiary Showing Is Necessary.

Finally, and without waiver of arguments for its exclusion, Dr. Maloney's testimony must be excluded unless and until Plaintiff makes a prima facie evidentiary showing entitling her to submission of a punitive damages question: "The proffered evidence as to the financial condition of defendant will be competent only if the evidence develops a case warranting the jury in awarding punitive or exemplary damages."  *Parkins v. Brown*, 241 F.2d 367, 371 n.2 (5th Cir. 1957).  Thus, courts err in permitting expert testimony by an economist concerning a

---

[33]  Dr. Maloney's claim to punitive damages expertise thus also must be viewed skeptically given that most of his methods for calculating punitive damages are intended to punish Wyeth for nationwide "misconduct," in contravention of the Supreme Court's holding that a state does not have "a legitimate concern in imposing punitive damages to punish a defendant for unlawful acts committed outside of its jurisdiction." *State Farm*, 538 U.S. at 409.

corporation's assets, cash flow, and net worth "without first determining that a prima facie case of gross negligence had been established by the evidence." *Burton v. Wyeth-Ayerst Laboratories Div. of Am. Home Products Corp.*, 513 F. Supp. 2d 708, 716-17 (N.D. Tex. 2007) (finding expert testimony that "suggests to the jury that it should assess a punitive damage award (if any) in the range of $100 million to $2.5 billion . . . is wholly prejudicial.").

## IV.   CONCLUSION

For the foregoing reasons, the Court should grant the motion and exclude the testimony of Dr. Maloney.

Dated: February 24, 2012

Respectfully Submitted,

By: /s/ *Gregory S. Meece w/ permission JHM*
Gregory S. Meece, *Attorney-in-Charge*
Texas State Bar No. 13898350
Gregory.Meece@tklaw.com

**THOMPSON & KNIGHT LLP**
333 Clay Street, Suite 1500
Houston, Texas  77002
Telephone:  (713) 654-8111
Facsimile:  (713) 654-1871

— *AND* —

John H. Martin
Texas State Bar No. 13086500
John.Martin@tklaw.com
Janelle L. Davis
Texas State Bar No. 24059655
Janelle.Davis@tklaw.com

**THOMPSON & KNIGHT LLP**
One Arts Plaza
1722 Routh Street, Suite 1500
Dallas, Texas  75201
Telephone:  (214) 969-1700
Facsimile:  (214) 969-1751

**ATTORNEYS FOR DEFENDANT**

## CERTIFICATE OF CONFERENCE

Counsel has complied with the meet and confer requirement in Local Rule CV-7(h).  This motion is opposed.  On February 17th and 20th, counsel for Plaintiff, Bryan Aylstock, and counsel for Defendant, Janelle L. Davis, conducted the conferences required by this rule. Despite a good faith effort by both sides, an agreement could not be reached and the discussions have conclusively ended in an impasse, leaving an open issue for the court to resolve.

_/s/ Janelle L. Davis_
Janelle L. Davis

## CERTIFICATE OF SERVICE

I hereby certify that on this 24th day of February, 2012 a true and correct copy of the foregoing was filed with the Court and served via electronic notification on all counsel of record.

_/s/ Janelle L. Davis_
Janelle L. Davis

064500 000019 AUSTIN 272831.2