**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**BEAUMONT DIVISION**

| | | |
|---|---|---|
| **JUDY ROMERO** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 1:03-cv-1367** |
| | § | |
| **WYETH PHARMACEUTICALS, INC.,** | § | |
| **and WYETH, INC.,** | § | **Judge Marcia A. Crone** |
| | § | |
| **Defendants.** | § | |

**PLAINTIFF'S *DAUBERT* MOTION TO**
**EXCLUDE EXPERT OPINIONS OF TREATING PHYSICIAN**

Plaintiff moves to strike certain portions of the testimony of plaintiff's treating physician, Scott McKenney, M.D., and any other treating physician, that constitute expert opinions unrelated to the diagnosis, treatment, care and prognosis of this particular patient. Throughout this hormone therapy litigation generally, and in this case in particular, Wyeth elicited expert opinion testimony from Dr. McKenney bearing on issues of breast cancer causation. Wyeth has not designated Dr. McKenney as a testifying expert pursuant to *Fed. R. Civ. P.* 26(a)(2), nor was any Rule 26 expert report served. Indeed, the witness specifically testified that he did not intend—nor had he been asked—to offer any general causation testimony and believed that his role was solely the care and treatment of the plaintiff in this case.

Because this witness is a fact witnesses who did not offer a report, did not prepare to give expert opinion or consent to act as an expert, those portions of his deposition which go beyond factual testimony about this particular patient should be stricken. Further any such testimony would not meet the *Daubert* standards as it is not based upon *any* methodology, much less

reliable or appropriate methodology. Since Wyeth has designated a number of retained experts to discuss general causation, any testimony from Dr. McKenney would also be cumulative.

Just a few months ago, in another hormone therapy case, United States District Judge Blanche M. Manning for the Northern District of Illinois, Eastern Division, granted an identical motion and excluded all such testimony.[1]

**Background**

At menopause, Judy Romero became hormone deficient in that her natural hormone levels decreased and she developed signs and symptoms of low hormone levels. Only a minority of women become hormone deficient after menopause, but unfortunately for Ms. Romero, she was one of this minority. Her physician thus prescribed hormone therapy (E+P) to treat this condition. As a result of her exposure to E+P, Ms. Romero developed a hormone dependent breast cancer, a specific type of cancer which requires hormones to grow and develop.

During her cancer treatment, Ms. Romero was treated by Dr. Scott McKenney, her oncologist.[2] Dr. McKenney was deposed in this case. In his deposition, Dr. McKenney agreed that he was a "medical oncologist, [a] treating physician," that he was not giving an expert opinion in this case,[3] and that he did not have an opinion as to whether hormone replacement therapy (E+P) causes cancer generally, much less whether it caused Ms. Romero's breast cancer.[4] Despite Dr. McKenney's clear admissions that he could not offer reliable expert

---

1 Ex. 1 - Order, *Schutter v. Wyeth*, 9/28/11.

2 Ex. 2 - Deposition of Dr. Scott McKenney, *Romero v. Wyeth*, 4/7/11 at pp. 14:24-15:3; 103:19-20.

3 Ex. 2 - Deposition of Dr. Scott McKenney, *Romero v. Wyeth*, 4/7/11 at p. 103:7-24.

4 Ex. 2 - Deposition of Dr. Scott McKenney, *Romero v. Wyeth*, 4/7/11 at p. 36:2-8.

opinions, Wyeth continued to try to elicit expert causation opinions from Dr. McKenney and had him comment on the methodology for developing a causation opinion and the relevance of various risk factors. Plaintiff's counsel objected to Wyeth's attempt to elicit such testimony and now seeks to have it stricken. This is the exact type of testimony that Judge Blanche M. Manning ruled inadmissible in *Schutter*.

In his deposition, Dr. McKenney testified that he specializes in the treatment of cancer, not in assessing what caused it.

> Q. As a -- as an oncologist treating patients with breast cancer in your clinical practice, you're more concerned about treating the patient rather than the cause, identifying -- in other words, identifying the type of breast cancer it is so that you can prescribe the right regimen for the patient to use to effectively treat the breast cancer?
>
> A. Correct. I treat patients.[5]

When asked if he ever tells a patient or could tell a patient what caused their breast cancer, Dr. McKenney clearly stated: "I don't know what caused her breast cancer, so I couldn't tell her what caused her breast cancer."[6] Consistent with his lack of knowledge, Dr. McKenney further testified that he has no opinion as to what role plaintiff's use of prempro may have played in her developing breast cancer.

> Q. Based upon your care and treatment of Ms. Romero, can you tell us what role Prempro played in her breast cancer?
>
> A. What role it played in her breast cancer. I don't know that I could say that it played a role or not in her breast cancer.[7]

---

5 Ex. 2 - Deposition of Dr. Scott McKenney, *Romero v. Wyeth*, 4/7/11 at p. 100:2-11.

6 Ex. 2 - Deposition of Dr. Scott McKenney, *Romero v. Wyeth*, 4/7/11 at pp. 45:22-24; 46:1-4.

7 Ex. 2 - Deposition of Dr. Scott McKenney, *Romero v. Wyeth*, 4/7/11 at p. 36:2-8.

Dr. McKenney confirmed that he considers himself to be Ms. Romero's treating physician, not a causation expert, and that he has not been asked to provide expert causation testimony.[8] Dr. McKenney also confirms that he does not have an opinion as to whether hormone replacement therapy (E+P) causes cancer.

> A. I think -- what I said before was I said there's a lot of studies out there, and they're conflicting. I just mentioned the study yesterday which adds to the confliction and confusion –
>
> Q. Okay.
>
> A. -- and doesn't put the nail in the coffin that estrogen -- that does or does not cause -- cause cancer.
>
> Q. So you -- you're not saying that it doesn't cause in situ cancer?
>
> A. Correct, I'm not saying that it doesn't cause cancer.[9]

Clearly, all of the causation testimony Wyeth sought to elicit from Dr. McKenney is outside the course and scope of his role as a treating physician.

Despite these crucial admissions concerning his lack of an expert opinion as to causation and that no such opinions were formulated during his care and treatment of this plaintiff, Wyeth spent a considerable amount of time at the deposition asking Dr. McKenney to opine about general causation issues and asking only peripheral questions about his care and treatment of Ms. Romero. There is little question that Wyeth's motivation in this deposition was not to have the doctor explain his interactions with Ms. Romero, but instead, to develop expert opinions without designating the witness as an expert or even pretending to follow the *Daubert* standards.

---

[8] Ex. 2 - Deposition of Dr. Scott McKenney, *Romero v. Wyeth*, 4/7/11 at p. 103:7-24.

[9] Ex. 2 - Deposition of Dr. Scott McKenney, *Romero v. Wyeth*, 4/7/11 at pp. 115:16-24; 116:1-4.

First, Wyeth questioned the doctor in detail about the methodology used by plaintiff's experts to do a case-specific causation assessment. Plaintiff's experts use differential diagnosis to evaluate whether hormone therapy caused a woman's breast cancer. This methodology has been unanimously accepted by over two dozen federal and state courts across this country, including by this very Court just a few months ago in *Lea v. Wyeth, et al.*, as well as by Judge Hoyt in *Zahn v. Wyeth, et al*.[10] Wyeth's pretrial challenges to almost a dozen different cancer physician experts – who all used the same methodology of differential diagnosis as plaintiff's experts here – have all been denied. Three appellate courts have reviewed the plaintiffs' scientific evidence and affirmed jury verdicts: the United States Court of Appeals for the Eighth

---

[10] **MDL Federal Court Orders**: Ex. 3 - Order denying expert challenges in *Reeves v. Wyeth*, 8/21/06; Ex. 4 - Order denying Wyeth's challenges in *Rush v. Wyeth*, 9/13/06; Ex. 5 - Order denying expert challenges in *Scroggin v. Wyeth*, 11/15/07; Ex. 6 - Order denying expert challenges in *Hill v. Wyeth*, 8/7/08; Ex. 7 - Order denying expert challenges in *LaFerrara v. Wyeth*, 6/30/10; Ex. 8 - Order denying Wyeth's Motion to Reconsider in *LaFerrara v. Wyeth*, 7/9/10; Ex. 9 - Order denying Wyeth's challenges in *Wilson v. Wyeth*, 9/17/10; Ex. 10 - Order denying expert challenges in *Curtis v. Wyeth*, 1/19/11. **Federal Courts**: Virginia: Ex. 11 - Transcript of order denying Wyeth's challenges to plaintiff's oncology expert in *Torkie-Tork v. Wyeth*, 11/15/10; Ex. 12 - Transcript of order denying Wyeth's challenges to plaintiff's pathology expert, Dr. Michaels in *Torkie-Tork v. Wyeth*, 11/23/10; Puerto Rico: Ex. 13 - Order denying expert challenges in *Rivera-Adams v. Wyeth*, 12/3/10; Florida: Ex. 14 - Order denying expert challenges in *Hansen v. Wyeth*, 6/24/11; Texas: Ex. 15 - Order denying expert challenges to plaintiff's oncology and pathology experts in *Lea v. Wyeth*, 9/16/11; Ex. 16 – Order denying expert challenges in *Zahn v. Wyeth*, 8/19/11; West Virginia: Ex. 17 - Order denying expert challenges in *Hines v. Wyeth*, 7/8/11. **State Court Orders**: Texas: Ex. 18 - Order denying expert challenges in *Choueifati v. Wyeth*, 2/17/11. Pennsylvania: Ex. 19 - Order denying expert challenges in *Nelson v. Wyeth*, 8/16/06; Ex. 20 - Order denying Wyeth's challenges to plaintiff's pathology experts in *Nelson v. Wyeth*, 8/16/06; Ex. 21 - Order denying expert challenges in *Simon v. Wyeth*, 4/16/07; Ex. 22 - Order denying expert challenges in *Barton v. Wyeth*, 9/8/09; Ex. 23 - Orders denying Wyeth's challenges to plaintiff's experts in *Kendall v. Wyeth*, 10/15/09; Ex. 24 - Order denying expert challenges in *Singleton v. Wyeth*, 1/20/10; Florida: Ex. 25 - Order denying expert challenges in *Esposito v. Wyeth*, 4/14/10; Nevada: Ex. 26 - Order denying expert challenges in *McCreary v. Wyeth*, 9/27/06; Ex. 27 - Transcript of order denying Wyeth's challenges to plaintiff's expert in *Woods / Woodhouse v. Wyeth*, 6/12/08 (challenges were also denied in *Rowatt v. Wyeth).*

Circuit,[11] the Nevada Supreme Court[12] and the Pennsylvania Superior Court.[13] When Wyeth tried to appeal the Eighth Circuit decision in *Scroggin*, specifically as to the *Daubert* ruling admitting Dr. Naftalis' causation testimony, the U.S. Supreme Court declined to take the case. This left intact the Eighth Circuit's strong approval of plaintiffs' expert's testimony and methodology.[14] In addition, this methodology has been published[15] and even presented at a recent scientific conference by plaintiff's expert in this case, Dr. Elizabeth Naftalis.[16]

Without any independent research into the topic of causation, Dr. McKenney stated that he was not aware of any methodology for determining what causes breast cancer in an individual woman.

> Q. Do you know of any generally accepted tests, medical tests, that a doctor can perform on Ms. Romero's tumor to let them know what caused it or promoted it or produced it?
>
> MR. THORNBURGH (Plaintiff's counsel): Objection.

---

11 *Scroggin v. Wyeth*, 586 F.3d 547, 566-67 (8th Cir. 2009), *cert. denied*, 130 S. Ct. 3467 (June 21, 2010).

12 *Wyeth v. Rowatt*, 244 P.3d 765 (Nev. 2010), *cert denied* (June 17, 2011).

13 *Daniel v. Wyeth Pharmaceuticals, Inc.*, 15 A.3d 909 (Pa. Super. 2011).

14 *Scroggin* at 566-67.

15 Ex. 28 - Simon, *Reduced vaginal bleeding in postmenopausal women who receive combined norethindrone acetate and low-dose ethinyl estradiol therapy versus conjugated equine estrogens and medroxyprogesterone acetate therapy*, Am. J. Obstet. Gynecol, Vol. 188:92-9 (2003)- PX ML 6075 at p. 5 (Clinical trial investigators assess whether a patient's breast cancer was causally related to her use of E+P and conclude that "one patient in CEE /MPA group experienced a serious adverse event that the investigator judged to be possible related to the study treatment. This adverse event was breast cancer").

16 Ex. 29 - Presentation by Dr. Elizabeth Naftalis at 2011 ASBD Convention.

A. No.

BY MR. BENEVENTO:

Q. Are you aware of any pathology that can be done on the tumor to determine whether it was from hormone therapy?

MR. THORNBURGH (Plaintiff's counsel): Objection.

A. No.

BY MR. BENEVENTO:

Q. Because there's unknowns as it relates to causing breast cancer, do you ever tell a patient or can you tell a patient what caused their breast cancer?

A. I don't know what caused her breast cancer, so I couldn't tell her what caused her breast cancer.

Q. Could you tell any patient that presented with a ductal carcinoma in situ what caused their breast cancer?

MR. THORNBURGH (Plaintiff's counsel): Objection.

A. No.

BY MR. BENEVENTO:

Q. Why is that?

A. I don't know what caused their breast cancer.[17]

Despite this, Wyeth had Dr. McKenney testify that, in his opinion, differential diagnosis cannot be used to determine causation.[18] Wyeth then moved on to eliciting opinions about

---

[17] Ex. 2 - Deposition of Dr. Scott McKenney, *Romero v. Wyeth*, 4/7/11 at pp. 45:8-24; 46:1-13.

[18] Ex. 2 - Deposition of Dr. Scott McKenney, *Romero v. Wyeth*, 4/7/11 at p. 120:1-9.

various risk factors for breast cancer. He was also asked questions regarding the correlation between hormone therapy and hormone positive breast cancer.[19] Wyeth got Dr. McKenney to opine about all of this even though Dr. McKenney had expressly stated that that he did not know the cause of breast cancer in general, much less what caused Ms. Romero's breast particular cancer.

Plaintiff thus seeks exclusion of any opinion from Dr. McKenney that (a) there is no methodology for assessing the cause or promotion of breast cancer in a particular woman, (b) that any particular methodology, such as differential diagnosis, cannot determine causation or promotion of breast cancer, (c) that E+P does not cause or does not promote breast cancer, or (d) any testimony relating to risk factors or cancer causation. None of that testimony relates to the physicians' care and treatment of Ms. Romero, the sole designated scope of his role in this case.

**1. Wyeth Failed to Appropriately or Timely Identify Plaintiff's Treating Physician as an Expert**

Wyeth never designated Dr. McKenney as an expert in this case and did not produce an expert report for him under the Federal Rules.[20] R. Evid. 26(a)(2)(A) is clear that any witness from whom a party intends to elicit expert testimony, including treating physicians, must be timely designated. A recent Illinois decision in a similar hormone therapy case confirms that "a treating physician who has not been designated as an expert may not offer opinions about causation." *Schutter v. Wyeth, Inc.*, 2011 WL 4501380, at *3 (N.D. Ill Sept. 28, 2011).[21] Wyeth cannot now backdoor an expert opinion from a treating doctor on an issue of crucial importance

---

19 Ex. 2 - Deposition of Dr. Scott McKenney, *Romero v. Wyeth*, 4/7/11 at p. 38:17-22, 39:14-19.

20 Ex. 30 - Defendant's Disclosure of Expert Testimony in *Romero v. Wyeth*, 6/20/11.

21 Ex. 31 - Westlaw case citation.

to this case. As Wyeth readily acknowledged at Dr. McKenney's deposition, Dr. McKenney's designated role in this case is to testify as a "fact witness" with respect to his "care and treatment of Judy Romero."[22] To elicit opinions beyond that, Wyeth would have had to timely designate this physician as an expert, produce an expert report and allow the plaintiff to fully discover and fleshed out the basis for such opinions including using published literature to impeach his testimony. Wyeth did none of that.

Wyeth clearly intends to use Dr. McKenney's testimony to argue that there is no reliable methodology to perform a breast cancer causality assessment as well as to opine about breast cancer risk factors and general causation.[23] These questions require answers based on scientific, technical or specialized skill (i.e., expert opinion testimony). On September 28, 2011, in another E+P case pending before the United States District Court for the Northern District of Illinois, the Court, faced with this very same issue, held:

> The questions posed in this case about whether HRT causes breast cancer call for answers based upon "scientific, technical, or specialized knowledge" not possessed by a lay witness. *See Moore v. P & G-Clairol, Inc.*, 2011 WL 1002958, at *8-9[24] (excluding testimony from a treating physician that hair dye caused the plaintiff's injuries and noting that "[t]he requirement that treating physicians are properly disclosed is particularly justified in a product liability suit like this one, where expert testimony is critically important because such testimony is almost always required on matters of causation and the jury is often asked to resolve a `battle of the experts'"). Thus, **a treating physician who has not been designated as an expert may not offer opinions about causation**.

---

22 Ex. 2 - Deposition of Dr. Scott McKenney, *Romero v. Wyeth*, 4/7/11 at pp. 7:10-14; 77:4.

23 Ex. 2 - Deposition of Dr. Scott McKenney, *Romero v. Wyeth*, 4/7/11 at pp. 120:1-9; 37:22-24; 38:1; 38:8-12.

24 Ex. 32 - Westlaw case citation.

*Schutter*, 2011 WL 4501380, at *3 (emphasis added).[25]

In *Schutter*, Wyeth deposed the plaintiff's treating physician who provided testimony similar to that given by plaintiff's treating physician here. As in the present case, Mrs. Schutter's treating physician confirmed that he did not do any type of causality assessment on his patient because it was not relevant to his treatment of her. *Id*. at 8. Despite that admission, Wyeth still elicited causation opinions from the doctor. As the court in *Schutter* held, "the fact that [the treating physician] did not consider causation when treating Ms. Schutter is an additional reason she may not opine about causation." *Id*. Dr. McKenney should similarly not be allowed to opine about causation.

Further, the *Schutter* court added: "a treating physician who has not been designated as an expert may not offer opinions about causation." *Id*. As the Fifth Circuit noted in *Hamburger*, even "essential" testimony is no excuse to circumvent Rule 26(a)(2)(A).[26] *Hamburger v. State Farm Mut. Auto. Ins. Co.*, 361 F.3d 875, 882-83 (5th Cir. 2004). The federal rules provides, in pertinent part, that "a party must disclose to the other parties the identity of witnesses it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705 [governing expert opinion]." *Id*. at 882. The disclosure "must be accompanied by a written report–prepared and signed by the witness–if the witness is one retained or specially employed to

25 Ex. 31 - Westlaw case citation.

26 The *Hamburger* opinion noted:

> [T]his Court assumes *arguendo* that Dr. Fitzgerald's testimony was essential to Hamburger's claims for medical expenses and pain and suffering for the herniated disc. Although the importance of Dr. Fitzgerald's proposed testimony weighs against exclusion of that testimony, the importance of proposed testimony cannot "singularly override the enforcement of local rules and scheduling orders." Additionally, the importance of the testimony underscores how critical it was for Hamburger to have timely designated Dr. Fitzgerald.

*Id*. at 883.

provide expert testimony in the case." Fed. R. Civ. P. 26(a)(2)B). Such report is required to set forth, among other things, "(i) a complete statement of all opinions the witness will express and the basis and reasons for them; (ii) the data or other information considered by the witness in forming them; and (iii) any exhibits that will be used to summarize or support them." *Id*.

While treating physicians can ordinarily be deposed and testify at trial without the necessity of submitting a report under Rule 26, "[i]f the opinion testimony is based on information learned outside the course of treatment, a written report is required." *Lee v. Valdez*, 2008 WL 4287730, at *3 (N.D. Tex. Sept. 18, 2008).[27] *See also Meyers v. Nat'l R.R. Passenger Corp. (Amtrak)*, 619 F.3d 729, 734 (7th Cir. 2010) (*citing Musser v. Gentiva Health Servs*., 356 F.3d 751, 758 n.3 (7th Cir. 2004)) (where "testimony exceeds the scope of treatment and ventures into more general expert testimony, a report may be necessary.")

As the court in *Krischel v. Hennessy*, 533 F. Supp. 2d 790 (N.D. Ill. 2008) observed:

> A treating physician who testifies about his observation, diagnosis and treatment of a patient is testifying about what he saw and did and why he did it, even though the physician's treatment and his testimony about that treatment are based on his specialized knowledge and training. As the Seventh Circuit expressed in *Musser*, when the treating physician's testimony is so limited, he is "providing expert testimony because of [his] involvement in the facts of the case . . . ." 356 F.3d at 757. Thus, when a treating physician limits his testimony to his observation, diagnosis and treatment, there is no need for a Rule 26(a)(2)(B) report.

*Id*. at 795.

On the other hand, the court noted

> often a treating physician who testifies as to ***causation***, prognosis or future disability is going beyond what he saw and did and why he did it. He is going beyond his personal involvement in the facts of the case. He is giving an opinion that he formed because there is a lawsuit.

*Id*.

---

27 Ex. 33 - Westlaw case citation.

Indeed, "[t]he biggest concern with permitting treating physicians to testify in all circumstances without providing expert reports is that this would permit circumvention of the policies underlying the expert report requirement." *Lee*, 2008 WL 4287730, at *3[28] (quoting *Fielden v. CSX Transportation, Inc*., 482 F.3d 866, 869 (6th Cir. 2007). For this reason, in *Meyers*, *supra*, the Seventh Circuit expressly held that:

> [A] treating physician who is offered to provide expert testimony as to the cause of plaintiff's injury, ***but who did not make that determination in the course of providing treatment***, should be deemed to be one "retained or specially employed to provide expert testimony in the case," and thus is required to submit an expert report in accordance with Rule 26(a)(2).

*Meyers*, 619 F.3d at 734-735.

Thus, absent providing an expert report, a treating physician's testimony "is confined through treatment of the patient." *Lee*, 2008 WL 4287730, at *4.[29] "If the testimony extends beyond this, a written report is required." *Id; see also Lowery v. SPA Crafters, Inc*., 2004 WL 1824380, at *2 (W.D. Tex. Aug. 16, 2004)[30] ("Thus, when a physician's proposed opinion testimony extends beyond that care or treatment, and the physician's specific opinion testimony is developed in anticipation of trial, the treating physician becomes an expert from whom an expert report is required. *See Musser v. Gentiva Health Servs.*, 356 F.3d 751, 758 n. 3 (7th Cir.2004)."). In the present case, it is abundantly clear that Wyeth elicited expert opinions beyond the treating physicians' diagnoses, treatment and care of the patient. Dr. McKenney testified that he formed no causation opinions *at the time he treated* Ms. Romero and there is

---

28 Ex. 33 - Westlaw case citation.

29 Ex. 33 - Westlaw case citation.

30 Ex. 34 - Westlaw case citation.

certainly no evidence that he had reviewed any of her risk factors for developing breast cancer *at the time he treated her*.[31] Thus, *any* testimony bearing on the issue of causation or lack thereof was outside of his involvement in this case and crossed the line into the realm of expert opinion. If Wyeth intended to utilize this expert opinion, it should have first designated Dr. McKenney as retained experts and provided proper Rule 26(a)(2) reports; neither of which it did.[32]

It is of no importance that the testimony is not being offered to affirmatively support causation because its clear purpose is to support Wyeth's claim that individual causation cannot be proven. It is, in a manner of speaking, an "anti-causation" opinion, but an expert opinion nevertheless and beyond the scope of the treating doctor's involvement in this case.

Under the circumstances, this Court should exclude and/or strike those portions of Dr. McKenney's testimony which go beyond his diagnoses, treatment and/or care of Ms. Romero to the extent it constitutes expert opinion.

**2. Treating Physician's Opinions do not Pass Muster under *Daubert***

To ensure reliability, the *Daubert* standard requires that an expert's opinions be grounded in methods and procedures of science, rather than just *subjective belief or unsupported speculation.* *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 590 (1993). An expert's testimony is inadmissible as a matter of law under Rule 702 when the expert has not stated a scientific basis for his or her opinion and it is based primarily on personal opinions, legal conclusions and unsupported speculation. *See Garcia v. BRK Brands, Inc.*, 266 F.Supp.2d 566,

---

[31] Ex. 2 - Deposition of Dr. Scott McKenney, *Romero v. Wyeth*, 4/7/11 at p. 36:2-8.

[32] On June 20, 2011, Wyeth submitted its expert designations and case specific expert reports. None of these witnesses is listed as an expert which, by itself, is reason to exclude those portions of the witness' testimony which constitutes expert opinion for which a Rule 26(a)(2) report would be necessary. *See, e.g.*, *Musser*, 356 F.3d at 758 ("exclusion of non-disclosed evidence is automatic and mandatory under Rule 37(c)(1) unless non-disclosure was justified or harmless.").

573 (S.D. Tex. 2003) ("To be deemed reliable, an expert scientific opinion must be grounded in the 'methods and procedures of science,' and must be more than mere 'subjective belief or unsupported speculation.'") (quoting *Daubert v. Merrell Dow Pharmaceuticals, Inc*., 508 U.S. 579, 590 (1993)). The testimony of plaintiff's treating physicians on areas outside of their case and treatment of the plaintiff are unreliable as they are admittedly based on nothing beyond speculation and personal opinion.

Any opinions on breast cancer causation or promotion by Dr. McKenney must be excluded because they are not reliable, are not based upon a review of the science on this issue, are anchored on mere personal opinion, and are not reliable science. Dr. McKenney admitted that he is a treating physician, not a causation expert, and he does not know what causes breast cancer. As such, to allow Wyeth to proffer this testimony would be highly prejudicial to the plaintiff and confusing to the jury.

A very recent ruling from this Court says it best when it said: "As an initial matter, the court notes that differential diagnosis is a reliable methodology to determine whether E+P promotes the growth of breast cancer" and went on to find that plaintiff's experts' "application of differential diagnosis to Plaintiff's case is reliable."[33] Yet, without any research or understanding of the issue, Dr. McKenney stated the exact opposite in his deposition.[34] To allow such testimony—which is based on no actual science, research or methodology—would undermine the entire *Daubert* process. Dr. McKenney's opinions on this issue are nothing more than his personal opinions and do not ever assess causation and has no expertise on this issue.

---

[33] Ex. 31 - Order Denying Defendant's Motion to Exclude the Specific Causation Testimony of Drs. Naftalis and Waldron, *Lea v. Wyeth et al*., entered 9/16/11 at pp. 6-7.

[34] Ex. 2 - Deposition of Dr. Scott McKenney, *Romero v. Wyeth*, 4/7/11 at p. 120:1-9.

**Conclusion**

Dr. McKenney unequivocally concedes that he does not assess breast cancer causation or the methodology used to evaluate case specific causation in his practice. He also formed no such opinions while treating Ms. Romero. Indeed, as he readily admits, he does not know what role the use of hormone therapy treatment played in plaintiff's development of breast cancer.[35] This is consistent with what he tells all of his breast cancer patients—that he does not know what caused their breast cancer.[36] Accordingly, any opinion testimony offered by Dr. McKenney, or any other treating physician on causation, is clearly outside the scope of his designation as a treating physician, unreliable, speculative, and offered without appropriate expertise or understanding of the issue. Wyeth had its opportunity to designate Dr. McKenney on the issue of breast cancer causation but chose not to do so. Further, Wyeth has already designated numerous retained experts who will provide these exact causation opinions so the testimony from these physicians is cumulative at best. For all of the reasons stated above, plaintiff requests the Court grant its motion.

Dated this 24th day of February, 2012.

Respectfully Submitted,

/s/ Bryan F. Aylstock

Bryan F. Aylstock
Daniel J. Thornburgh
Nathan C. Bess
Debra Renee Baggett
Aylstock, Witkin, Kreis & Overholtz, PLLC
17 E. Main Street, Suite 200
Pensacola, FL 32502

35 Ex. 2 - Deposition of Dr. Scott McKenney, *Romero v. Wyeth*, 4/7/11 at p. 36:2-8.

36 Ex. 2 - Deposition of Dr. Scott McKenney, *Romero v. Wyeth*, 4/7/11 at pp. 45:8-24; 46:1-13.

(850) 202-1010
baylstock@awkolaw.com
dthornburgh@awkolaw.com
nbess@awkolaw.com
rbaggett@awkolaw.com

Zoe B. Littlepage
Natasha D. Hanberry
LITTLEPAGE BOOTH
2043A W. Main St.
Houston, TX 77098
(713) 529-8000 – Telephone
(713) 529-8044 – Facsimile
zoe@littlepagebooth.com
natasha@littlepagebooth.com

**Attorneys for Plaintiff**

**CERTIFICATE OF CONFERENCE**

Pursuant to Local Rule CV-7(h), the undersigned plaintiff's counsel conferred with Wyeth's counsel by electronic mail on February 23, 2012, in a good faith attempt to resolve the instant dispute, but was unable to reach an accord and the Motion is opposed.

/s/ Bryan F. Aylstock

**CERTIFICATE OF SERVICE**

I hereby certify that on this the 24th day of February, 2012, a true and correct copy of the foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system, and notification was sent to the parties below:

Laura E. De Santos
Gordon & Rees
1900 West Loop South, Suite 1000
Houston, TX 77027
713-961-3366
Fax: 713-961-3938
ldesantos@gordonrees.com

Michael Klatt
Gordon & Rees LLP
816 Congress Avenue, Suite 1510
Austin, TX 78701
512-391-0197
Fax: 512-391-0183
mklatt@gordonrees.com

Bryon J Benevento
Snell & Wilmer LLP
15 West South Temple, 1200
Salt Lake City, UT 84101
801/257-1902
18012571800 (fax)
bbenevento@swlaw.com

Kathy Ann Cochran
Wilson Smith Cochran & Dickerson
1215 4th Avenue
Suite 1700
Seattle, WA 98161
206/623-4100
206/623-9273 (fax)
cochran@wscd.com

Janelle Lauren Davis
John Martin
Thompson & Knight - Dallas
1722 Routh Street, Ste. 1500
Dallas, TX 75201-2533
214-969-1677
214-999-1657 (fax)
janelle.davis@tklaw.com
John.martin@tklaw.com

Gregory S Meece
Thompson & Knight
333 Clay St., Suite 3300
Houston, TX 77002
713/654-8111
17136541871 (fax)
gregory.meece@tklaw.com

Caryl Lyn Pruitt
Mitchell Williams Selig Gates & Woodyard
425 W Capitol Ave., Suite 1800
Little Rock, AR 72201-3525
501/688-8869
501/688-8807 (fax)
lpruitt@mwlaw.com

Jay Joseph Schuttert
Snell & Wilmer LLP - Las Vegas
3883 Howard Hughes Pkwy, Suite 1100
Las Vegas, NV 89169
702/784-5200
702/784-5252 (fax)
jschuttert@swlaw.com

/s/ Bryan F. Aylstock
Bryan F. Aylstock