# EXHIBIT 41

page



IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION
- - -
IN RE:
PREMPRO PRODUCTS : MDL DOCKET NO.
LIABILITY LITIGATION : 4:03CV1507 WRW
----------------------------------------
IN THE COURT OF COMMON PLEAS
PHILADELPHIA COUNTY, PENNSYLVANIA
IN RE: HORMONE : NOVEMBER TERM,
THERAPY LITIGATION : 2003
: NO. 0001
----------------------------------------
CROSS NOTICED IN VARIOUS OTHER ACTIONS
----------------------------------------

- - -
C O N F I D E N T I A L
SUBJECT TO PROTECTIVE ORDER
September 9, 2005
- - -

Continued videotape deposition of STEVEN R. STRICKLAND, held in the offices of Reed Smith, LLP, 2500 One Liberty Plaza, 1650 Market Street, Philadelphia, Pennsylvania 19103 commencing at 9:10 a.m., on the above date, before Linda Rossi Rios, a Federally Approved Registered Professional Reporter and Notary Public of the Commonwealth of Pennsylvania.
- - -

ESQUIRE DEPOSITION SERVICES
15th Floor
1880 John F. Kennedy Boulevard
Philadelphia, Pennsylvania 19103
(215) 988-9191

page



A P P E A R A N C E S :

SCHMIDT, RONCA & KRAMER
BY: JAMES R. RONCA, ESQUIRE
209 State Street
Harrisburg, Pennsylvania 17101
(717) 232-6300
Counsel for the Plaintiffs

what is appropriate.
Q. Those are written down?
A. Yes, they are.
Q. Given to every sales reps or just given to like the district managers for them to tell the sales rep?
A. Well, first off, you're talking about internal policy, and then we'll get to the sales force in a second.
Q. Right.
A. Within Wyeth there's a policy that exists which talks about, as we were talking about earlier, the level of review and the types of reviews that have to occur for each piece of information that goes out to the field, including the messages that go along with that. So there are rules in place that exist at Wyeth. Most of those rules are enacted, I guess, for lack of a better term, through the CCC process.
Q. And is it your -- and there's rules that the FDA has?
A. Yes.

page 622

Q. There's actually federal rules that drug companies have to follow?
A. I'm not expert in that, but certainly those rules would be the guidance that would be consistent with the Wyeth policy.
Q. And do you think Wyeth's policy is exactly the federal rules or stronger and more stringent than the federal rules?
MS. WILLIAMS: Objection. Form.
THE WITNESS: I'm not sure I can answer that. I'm not the expert in that particular area.
BY MS. LITTLEPAGE:
Q. Have you ever read the CFRs? Have you ever read the actual federal rules?
A. No, I have not.
Q. Okay. Do y'all get any sort of training on the CFRs?
A. Do I as a --
Q. Marketing manager, any of

page 623

the levels of -- any of the positions that you've had in your career, have you

ever received training on the actual federal rules?

A. I would have training not in those areas, but in with regards to what Wyeth's policies is for appropriate promotion.

Q. And it's your understanding that Wyeth's policy is based upon those federal rules?

A. That's correct.

Q. So, in essence, learning Wyeth's policy means you learn the federal rules?

A. That would be my understanding.

Q. Okay. Tell me what fair balance is.

A. What is fair balance?

Q. Uh-huh. Define for me fair balance.

A. Again, my understanding, fair balance would be typically

page 624

additional information, important information, risk information, also any indications for the product that are in promotional materials or in consumer materials that provide additional information to the patient relevant to the product. It's typically called fair balance, because although I don't know the exact rules, whenever claims are made about our product, typically there's balancing information about potential risks of the product.

Q. You need to give the doctor equal level of information about the benefits and the risks?

A. Correct.

Q. Can't just talk about the good and not talk about the bad?

A. Correct. The fair balance would be a part of the sales promotion pieces that a rep has to work with.

Q. So the actual printed pieces have fair balance in them?

A. That's correct.

page 625

Q. And the rep in his conversations is supposed to also use fair balance?

A. They were supposed to refer

to the fair balance, yes.
Q. Is that true of unbranded and branded, if he's going to go talk to a doctor and you say it's appropriate for him to talk about unbranded material, is the rep supposed to use fair balance in that discussion?
A. If I could, please, again just draw a distinction. Unbranded would not be product specific. So -- now, for example, when we were talking about yesterday some of the disease state materials that we were talking in general about the menopause, those are not brand specific, so there is no fair -- since there are no claims being made about product, there is no fair balance that is required to be included in those particular pieces.
Now, there is also other

page 626

unbranded materials that are called category, category unbranded, meaning there might be reference to HRT, not to a brand, but to a therapeutic category. Now, typically fair balance, since it's not referring to a specific brand, is not required as a part of that particular unbranded execution, but I do know that at Wyeth we were actually a little more conservative and actually included what we called an unbranded fair balance or fair balance information that was maybe less specific to the brand, but certainly relevant to the category.
Q. Okay. Let's understand you.
MS. WILLIAMS: Wait a minute. Stop. I need to state an objection. The witness just gave an answer. You have written the word "no" on the easel, which is a totally inaccurate representation of what the witness has just said, and so I --
MS. LITTLEPAGE: Well, maybe

page 627

you should wait for my next question then. How about that?
BY MS. LITTLEPAGE:
Q. Understanding your answer, unbranded materials which deal with menopause or disease states do not under