# EXHIBIT 72

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

IN RE: PREMPRO PRODUCTS LIABILITY MDL Docket No. 4:03CV01507 WRW

* * * * * * * * * *

LINDA REEVES,
Plaintiff, Individual Case
v. No. 4:05CV00163 WRW
WYETH INC.,
Defendant.

* * * * * * * * * *

Wednesday, September 6, 2006 - Little Rock, Arkansas - 8:20 a.m.

TRANSCRIPT OF TRIAL - VOLUME 12
BEFORE THE HONORABLE WILLIAM R. WILSON, JR.,
UNITED STATES DISTRICT JUDGE, and a jury

APPEARANCES:

On Behalf of the Plaintiff:

MS. ZOE LITTLEPAGE
MR. RAINEY C. BOOTH
Littlepage Booth
408 Westheimer Street
Houston, Texas 77006

MR. MICHAEL L. WILLIAMS
MS. LESLIE W. O'LEARY
Williams, Love, O'Leary, Craine & Powers, P.C.
9755 SW Barnes Road, Suite 450
Portland, Oregon 97225-6681

MR. ERIK BRETT WALKER
Hissey, Kientz & Herron, P.L.L.C.
16800 Imperial Valley Drive
Suite 130
Houston, Texas 77070

[CONTINUED]



APPEARANCES CONTINUED:

On Behalf of the Defendant:

MR. F. LANE HEARD, III
MR. STEPHEN L. URBANCZYK
MS. LISA M. DUGGAN
MR. RYAN THOMAS SCARBOROUGH
MR. JOHN W. VARDAMAN

A. That's correct.
Q. And I think you told the jury that the reason Wyeth had a company policy -- actually, April, can you turn to -- let's turn to tab 24, 265.
MS. LITTLEPAGE: Can you pull up 265 for me.
BY MS. LITTLEPAGE:
Q. I think you told Mr. Urbanczyk --
MS. LITTLEPAGE: Go down a little bit. Let me --
BY MS. LITTLEPAGE:
Q. -- that the reason Wyeth had a company policy to not fund studies involving breast cancer is, you read that to mean Wyeth didn't fund studies involving women who had already had breast cancer; right?
A. That's my understanding of our position, yes.
Q. Now, nowhere in this document does it say that; right?
A. I don't think it says those words, but, again, it's my understanding that that is what the position was.
Q. And do you know anything about this ECOG group, why they would be doing this type of study in women who have already had breast cancer?
A. I don't know.
page 2482

Q. Do you know if they are led by a reputable investigator or whether the lead investigator in this study is someone that is just out there or someone who is respected? Do you know anything about this?
A. I don't know. Could very well be a reasonable proposal. It's just one that Wyeth elected not to pursue.
Q. Well, let me hand you what's been marked as Plaintiff's Exhibit 1090.
MS. LITTLEPAGE: Judge, we move to admit Plaintiff's Exhibit 1090.
MR. URBANCZYK: Let me just check, your Honor. Mr. Scarborough?
MR. SCARBOROUGH: No objection.
MR. URBANCZYK: No objection.
THE COURT: Admitted.
(Plaintiff's Exhibit 1090 received in evidence.)
BY MS. LITTLEPAGE:
Q. And this is a letter to Wyeth, right, sir, in 1993?
A. Yes. It appears to be.
Q. Go to the second page, April, so let's make sure that it's coming from these ECOG people, Eastern Cooperative Oncology Group; right?
A. Yes, that's correct.
Q. And this is the letter sent to Wyeth requesting that Wyeth fund this study; right?
page 2483

A. Yes, it appears to be.
MS. LITTLEPAGE: And go to page one, April, and can you go down a little bit.
BY MS. LITTLEPAGE:

Q. Let's see who the principal investigator is going to be on this ECOG proposal. That's Dr. Trudy Bush; correct?
A. Yes.
Q. And you know, sir, that Dr. Trudy Bush has a long-standing relationship with Wyeth; right?
A. Dr. Bush also has been an advisor to Wyeth over time, yes.
Q. And I think the jury has seen several documents where Dr. Bush is speaking for Wyeth, consulting with Wyeth, being a Wyeth spokesperson. True?
A. Yes.
MS. LITTLEPAGE: Thank you, Mr. Victoria.
I pass the witness.

RECROSS-EXAMINATION

BY MR. URBANCZYK:
Q. Take a look at the exhibit that Ms. Littlepage just showed you. This is the letter to Ms. Cox from the ECOG folks. And she talked to you about Trudy Bush. I just wanted for the jury to be clear here that ECOG is proposing a trial of hormone replacement therapy in breast cancer survivors. And that is consistent with your understanding?
A. (Nods head.)

page 2484

Q. Your understanding is based on your interpretation of these memos or your understanding as an employee of Wyeth involved in hormone therapy in this time period?
A. No. It's my understanding based on review of the memos, but also on my recollection of discussion of the issues at that time.
MR. URBANCZYK: I think that's all I have, your Honor.
MS. LITTLEPAGE: Nothing further.
THE COURT: What?
MS. LITTLEPAGE: Nothing further.
THE COURT: Juror questions?
No juror questions.
You may stand down. Thank you, sir.
THE WITNESS: Yes, sir.
THE COURT: Can this witness be excused?
MS. LITTLEPAGE: He may.
THE COURT: You're excused to go about your business. You can stay in the courtroom, or you can go where you want to go.
THE WITNESS: Thank you very much.
THE COURT: Next witness?
MR. WILLIAMS: Plaintiffs call Dr. Donald Austin.
THE COURT: Dr. Austin.
DONALD AUSTIN, PLAINTIFF'S WITNESS, DULY SWORN

DIRECT EXAMINATION

page 2485

BY MR. WILLIAMS:
Q. All right. Dr. Austin?
A. Yes.
Q. I hear you fine.