# EXHIBIT 74

ARNOLD & PORTER
555 TWELFTH STREET, N.W.
WASHINGTON, D.C. 20004-1206
(202) 942-5000
FACSIMILE: (202) 942-5999

NEW YORK
DENVER
LOS ANGELES
LONDON

DONALD O. BEERS
(202) 942-5012
INTERNET: Donald_Beers@aporter.com

November 7, 2000

VIA FACSIMILE, HARD COPY TO FOLLOW

Susan Allen, M.D., M.P.H.
Director, Division of Reproductive and Urologic Drug Products
Office of Drug Evaluation III
Center for Drug Evaluation and Research
Food and Drug Administration
Rockville, MD 20857

Re: Labeling Changes for Hormone Replacement Products

Dear Dr. Allen:

I am writing on behalf of Wyeth-Ayerst Research, Pfizer Inc., and Pharmacia Corporation concerning the essentially identical letters and follow-up telephone calls to each of these companies requesting labeling changes in their estrogen replacement therapy and estrogen/progestin combination hormonal replacement therapy products. Your letter dated August 10, 2000 proposed specific language for the physician package insert and patient package insert for each such product. In the letter you "request" the changes outlined. The letter then goes on to state, however, that "these changes must be implemented within 90 days of this letter or at the next printing, whichever comes first." In the follow-up telephone calls, the companies were told that FDA also expects the deletion of certain existing language in the Precaution section of the labeling concerning studies of cardiovascular risk and estrogen use.

As you know, under the New Drug Application review system, applicants propose labeling language, which FDA reviews. Thus, as a practical matter, changes in labeling generally result from a negotiation process that recognizes and respects the different expertise and perspectives of the applicants and the agency. It is not consistent with the law for the FDA simply to dictate proposed language for an applicant's labeling without providing a meaningful opportunity for dialogue between the applicant and the agency.

We recognize that the situation is necessarily somewhat different when, as here, class labeling is involved. In such circumstances, however, the applicant continues to have a contribution to make to the process and, as FDA has recognized in other contexts, a right to have its views considered. Thus, FDA generally has addressed potential changes in class labeling for hormonal drug products in guidances for industry. FDA has,

in conformance with requirements of the Food and Drug Administration Modernization Act of 1997, committed itself to following "Good Guidance Practices." Those practices require that, for a guidance that involves "complex scientific issues," FDA seek comment from interested parties before implementing the guidance. See generally 65 Fed. Reg. 7321 (Feb. 14, 2000) (proposed regulations codifying current FDA practice). Compare 21 U.S.C. § 371(h)(1)(c) (statutory requirement). While the information addressed in your August 10 letter is important, FDA has itself taken some time to review it and to suggest class labeling addressing it. Thus, we do not believe that the agency can justify a conclusion that prior input from the affected applicants is not feasible or appropriate (the only basis under FDA policy and the statute to deny public participation prior to finalization of FDA's position). Id.

Whether or not the Good Guidance Practice policy directly governs this matter, we believe it is clear that the spirit of that policy, which requires an opportunity to comment on FDA pronouncements concerning complex scientific issues before they are implemented, should govern the agency's handling of the requested changes to labeling at issue here. This is particularly the case when, as here, there are legitimate objections to some of the changes your Division has proposed. We understand that FDA is willing to accept applicant comments on the next revision of the class labeling, i.e., after implementation of the changes your Division has proposed. We think you will agree, however, that such a post hoc opportunity, which could at best lead to sequential changes to the labeling, is not a satisfactory alternative to an opportunity to have applicant views considered and if appropriate accepted before implementation.

Each of the applicants referred to above has its own views concerning the proposed language. Each is prepared to submit, or has already submitted, those views for the agency's consideration. As a practical matter, however, FDA cannot give fair consideration to those views and implement any appropriate modifications and still require the changes to be made in the time period outlined in your letter. We respectfully request, therefore, that you (1) suspend the currently pending request for labeling changes within 90 days of August 10, 2000, (2) set a time by which any comments on the proposed changes should be submitted, (3) provide an opportunity for representatives of the affected applicants to discuss these changes with you or your staff, and (4) after those views have been considered and, if appropriate, incorporated, notify the applicants of the Division's final position about changes that should be made in the labeling. At that point, a reasonable time should be permitted to allow the orderly incorporation of the changes into the labeling.

The applicants involved wish to emphasize that they consider the issues raised by your letter and the follow-up calls to be very important and take seriously their obligations to convey to physicians and to patients all information of relevance to the

applicants' products. We only ask that, consistent with FDA's policy and the statutory procedure, a process be adopted that will permit a meaningful dialogue concerning the proposed label changes so that the best language may be adopted.

Please let me know as soon as possible if your office will agree to change the schedule as we have requested. If you would like to discuss this request, please feel free to call.

Sincerely,

Donald O. Beers

cc: James Morrison
Jane Axelrad, Esq.
Florence Houn, M.D.
Heidi Jolson, M.D., M.P.H.